ORDERED.

Dated: June 28, 2018

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Cheryl Ann Reid, | ) | Case No. 8:17-bk-09503-RCT |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

**MEMORANDUM DECISION AND ORDER
GRANTING, IN PART, DEBTOR'S MOTION TO DETERMINE SECURED
STATUS OF HYUNDAI CAPITAL AMERICA DBA HYUNDAI MOTOR FINANCE**

As a matter of first impression, this court must determine whether a vehicle purchased by a debtor to earn a living driving for a ridesharing service, here Uber, is considered a vehicle purchased for "personal use."

This issue is considered, following trial, on Debtor Cheryl Ann Reid's Amended Motion to Determine Secured Status of Hyundai Capital America DBA Hyundai Motor Finance (the "Motion").[1] Ms. Reid seeks to bifurcate Hyundai Capital America DBA Hyundai Motor Finance's ("Hyundai") claim, which is secured by Ms. Reid's 2016 Hyundai Elantra (the "Vehicle"), under section 506 of the Bankruptcy Code.[2] Hyundai objects, asserting the hanging paragraph in section

---

[1] Doc. 17.
[2] Unless otherwise stated, all statutory references are to 11 U.S.C. §§ 101 *et seq*. ("Code" or "Bankruptcy Code").

1325(a) of the Code prevents the use of section 506 to reduce the amount of a secured claim owed on a vehicle purchased less than 910 days before a bankruptcy filing when that vehicle was purchased "for the personal use of the debtor."

## BACKGROUND

Ms. Reid purchased the Vehicle new on June 20, 2016. Hyundai provided the financing for the purchase. Some 506 days later, on November 8, 2017, Ms. Reid filed her chapter 13 petition. She valued the Vehicle at $9,225.00 in her bankruptcy schedules. Hyundai timely filed a fully secured claim in the amount of $22,756.71.[3]

In her chapter 13 plan, Hyundai's debt is designated as a claim to be valued under section 506.[4] As required by this court's model plan, Ms. Reid promptly filed her Motion to value the Vehicle and bifurcate Hyundai's claim into a $9,225.00 secured claim and a $13,531.71 unsecured claim. Hyundai objected, citing the hanging paragraph.

After a preliminary hearing, the Motion was set for trial.[5] The parties later agreed to bifurcate the trial and limit the court's consideration to the issue of whether the Vehicle was purchased for Ms. Reid's "personal use."[6]

At trial,[7] Ms. Reid testified that in January 2016, after working at Applebee's and IHOP for over four years, the restaurants cut her hours dramatically from her then forty hours per week. Ms. Reid testified that she started driving for Uber in March 2016 to make up some of the income she lost from her two other jobs. Shortly thereafter, Ms. Reid discovered that she needed a new car to continue driving for Uber. Her old car did not meet Uber's standards because it had both

---

[3] Claim No. 1.
[4] Doc. 2, p.4
[5] Doc. 22.
[6] Doc. 32.
[7] The evidence adduced at trial consisted of Ms. Reid's testimony, Hyundai's credit file for the Vehicle (Cr. Ex. 1), and Ms. Reid's 2016 federal tax return (D. Ex. 1).

aesthetic and mechanical issues. So she bought the Vehicle that June, and immediately started driving for Uber full time as her principal employment.

When she bought the Vehicle, Ms. Reid told the sales associate that she was going to be an Uber driver. She also told the sales associate that she did not have a commercial insurance policy because Uber does not require one.

The Retail Installment Sale Contract under the heading "Primary Use For Which Purchased" indicates the use to be "Personal, family, or household unless otherwise indicated below." The contract then provides the option to check a box next to "business," "agricultural," or a blank which could be filled in. On the contract, the blank line is filled in with "N/A." None of the boxes are checked.[8]

On the Florida Department of Highway Safety and Motor Vehicles Application for Certificate of Title under line 3 labeled "Brands, Usage and Type," the box next to "private use" is checked. However, as Ms. Reid testified, there is no box available for commercial or business use. The only other option that might apply is "Taxi Cab."[9] And as Ms. Reid explained, to her mind the car was not a "Taxi Cab" and Uber is not a taxi service.

Ms. Reid's Schedule C of her 2016 federal tax return lists her "[p]rincipal business or profession" as "Uber Driver." Ms. Reid claimed "Car and truck expenses" of $3,780.00 based on 7,000 "[b]usiness" miles driven for Uber.[10] Her Schedule C indicates she drove 8,000 miles for "[o]ther" purposes. Ms. Reid stated these latter miles included a one-time trip to visit her daughter in Boston for the birth of her grandchild.

---

[8] Cr. Ex. 1, p.5.
[9] The options available on the Florida application include the following: Short Term Lease, Assembled From Parts, Long Term Lease, Bonded Title, Rebuilt, Kit Car, Police Vehicle, Glider Kit, Private Use, Manuf. Buy Back, Taxi Cab, Replica, Flood, Autonomous, Ilev, Electric, Custom, and Street Rod. No option is provided for "other" or "not applicable." Cr. Ex. 1, p.14.
[10] D. Ex. 1, p.5 (calculated at $0.54 per mile).

Ms. Reid also claimed related business expenses, specifically a phone.[11] The Schedule C notes the Vehicle was available for personal use when off-duty and that Ms. Reid had no other vehicle available for her personal use.[12]

## DISCUSSION

If a chapter 13 debtor wants to retain personal property over the objection of a secured creditor, section 1325(a)(5)(B) requires that the debtor's plan provide that the secured creditor retains its lien and for full payment of the allowed secured claim. Section 506 of the Code typically authorizes a debtor to limit the amount of a secured claim to the value of the collateral. However, section 1325(a) contains an unnumbered paragraph, commonly referred to as the "hanging paragraph," which makes section 506 unavailable to limit the secured claims of certain motor vehicle lenders. The hanging paragraph[13] states, in relevant part:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor . . . .

The parties concede that the Vehicle was purchased within the 910-day period preceding the bankruptcy filing and that Ms. Reid is the only person who drives the car. The parties also agree that the relevant inquiry involves the determination of Ms. Reid's intended use on the day she purchased the Vehicle. So the sole issue remaining is whether, when purchased, Ms. Reid intended the Vehicle for her "personal use."

Hyundai argues that the Retail Installment Sale Contract states on its face that the Vehicle

---

[11] The court takes judicial notice that Uber drivers require the use of a smart phone in order to connect with Uber and its patrons, as well as obtain route information and transmit GPS data.
[12] D. Ex. 1, p.5.
[13] The hanging paragraph is not enumerated. Because it follows section 1325(a)(8), the hanging paragraph is often referred to as "§ 1325(a)(9)" or "§ 1325(a)(*)."

was acquired for personal use. Ms. Reid responds that she bought the Vehicle with the intention that driving for Uber would become her sole source of income.[14] She admits that she uses the car for personal errands and used the Vehicle for a trip to visit her daughter, but stresses that her personal use was not the reason for her purchase of the Vehicle.

The Bankruptcy Code does not define the term "personal use."[15] Courts typically look at the "totality of the circumstances" to determine the debtor's intended use of a vehicle subject to the hanging paragraph, focusing on when the vehicle was acquired.[16]

Some courts use the "significant contribution" test. This test examines whether the debtor's use of the vehicle allows the debtor to make a significant contribution to the income of the family unit.[17] If so, the test is met and the hanging paragraph presents no obstacle to the application of section 506. This test is quite liberal, as it allows any amount of personal use so long as the debtor also uses the vehicle to drive to and from work, thereby generating income.[18]

At the opposite end of the spectrum is the "significant and material" test. This test looks to whether the debtor's personal use of the vehicle is significant and material regardless of the vehicle's other uses.[19] Under this conservative test, anything more than nominal personal use may negate a finding that the vehicle was purchased for business purposes even if that vehicle is instrumental in a debtor's business or the performance of the debtor's job.[20]

Somewhere in the middle is the "predominant use" test. Under this test, a court determines

---

[14] Ms. Reid's Schedule I indicates that, at the time when she filed her bankruptcy petition in November 2017, she had been employed as an Uber driver for 1.6 years. Doc. 1, Attachment to Sch. I.
[15] *In re McGuiness*, No. 17-bk-14746, 2018 WL 1162876, at *2 (Bankr. E.D. Tenn. March 2, 2018).
[16] *See id.*; *In re Strange*, 424 B.R. 584, 588, 592 (Bankr. M.D. Ga. 2010) ("It is well-established that the relevant time period for analyzing the personal use question is the time of acquisition of the vehicle at issue.").
[17] *See, e.g., In re Hill*, 352 B.R. 69 (Bankr. W.D. La. 2006).
[18] *See In re McGuiness*, 2018 WL 1162876, at *3 (citing *In re Counts*, No. 07-bk-60542, 2007 WL 2669204, at *9 (Bankr. D. Mont. Sept. 6, 2007)).
[19] *See, e.g., In re Solis*, 356 B.R. 398 (Bankr. S.D. Tex. 2006).
[20] *See id.*

5

whether the vehicle is used predominantly for business or personal use.[21]  Recognizing that vehicles are often used for both purposes, one court explained the difference between a vehicle used to travel to and from work and a vehicle used to perform the actual functions of a job:

> Transportation to and from work is a personal use in the sense that it satisfies the debtor's personal needs and obligations—namely, the need for a reliable means for the debtor to commute to his or her place of employment.  The court recognizes that work transportation has a monetary value in the sense that it allows the debtor to maintain a job (especially where there is no reliable public transportation), and that the income from the debtor's job may provide monetary benefits to the debtor and the debtor's family.  However, these benefits are still personal to the debtor and the debtor's family.  Any other reading would essentially eradicate the distinction between personal and business use.
>
> In order to establish that a vehicle is used for a "business" or "profit-making" purpose, a debtor must show that the vehicle is used to perform the functions of a business or a trade.  In other words, does the debtor use the vehicle to carry out his or her job duties once the debtor arrives at work?[22]

The issue presented—whether Ms. Reid, who acquired the Vehicle with the intent of driving for Uber, acquired it for personal use—is rather nuanced since Uber drivers are not required to have a dedicated work vehicle and are afforded the opportunity to drive as much or as little as they wish in order to earn income.  This factual scenario does not lend itself to either the "significant contribution" or the "significant and material" test.  Reminded of Goldilocks's experience with the three bears, the court finds the "predominate use" test to be just right.

When applying the "predominate use" test, a court considers several factors.  These are:

> the nature of the debtor's work, how the debtor's vehicle is used to perform the debtor's job duties, whether or not the debtor's employer requires the debtor to use his or her vehicle to perform the debtor's job-related duties, whether the debtor's employer reimburses the debtor for mileage, and whether or not the debtor claims any vehicle-related expenses as business expenses on the debtor's tax returns.[23]

Although a court must also consider the retail installment contract signed by the debtor at the time

---

[21] *See, e.g., In re Joseph,* No. 06-bk-50655, 2007 WL 950267 (Bankr. W.D. La. March 20, 2007).
[22] *In re Joseph,* 2007 WL 950267, at *3 (footnote omitted).
[23] *Id*.

of the vehicle's acquisition, the contract is not dispositive.[24]

Here, Ms. Reid drives for Uber, a ridesharing company. She picks up passengers at one location and drops them off at another location. To drive for Uber, drivers are required to use an eligible 4-door vehicle.[25] Although Uber allows drivers to rent a vehicle, access to an eligible vehicle is necessary. Ms. Reid credibly testified that her previous car was unreliable and did not meet the standards set forth by Uber. It makes sense that she would need a reliable car if she wanted to earn a living as an Uber driver. Moreover, immediately after she purchased the Vehicle, Ms. Reid began to drive for Uber full time.

Although the Retail Installment Sale Contract states that the Vehicle was acquired for personal use, it is unclear whether it was Ms. Reid or the sales associate who filled in the contract blanks. Ms. Reid credibly testified that she clearly informed the sales associate that she was buying the Vehicle to drive for Uber. Because Ms. Reid expressed her intent to use the Vehicle as an Uber driver and the contract does not reflect that intent, the court finds the contract to be ambiguous and inconclusive of Ms. Reid's intent.[26] For similar reasons, the statement in the Application for Certificate of Title is not dispositive.

It is true, as Hyundai notes, that Ms. Reid's 2016 federal tax return indicates that she used the Vehicle for non-business purposes more than for business purposes as it states she drove 7,000 miles for business purposes and 8,000 miles for other purposes.[27] However, Ms. Reid explained that she did not start driving full time for Uber until June, halfway through the year. She also testified that she had to use the Vehicle for a trip to visit her daughter in Boston for the birth of her

---

[24] *Id*.
[25] DRIVER REQUIREMENTS – HOW TO DRIVE WITH UBER, https://www.uber.com/drive/requirements/ (last visited June 25, 2018) ("In addition to [Uber's] minimum requirements . . . , each city has its own regulations for vehicles.").
[26] *See In re McGuiness*, 2018 WL 1162876, at *5 (finding the retail installment contract to be both ambiguous and inconclusive of the debtor's intent).
[27] D. Ex. 1, p.5.

grandchild. Depending on the route, Boston is approximately 1,300-1,600 miles away from Ms. Reid's home in Palm Harbor, Florida. Therefore, from that one trip alone, she put about 2,600 – 3,200 miles on the Vehicle. Had she not made this trip, the number of miles for business purposes would have exceeded those for other purposes. And furthermore, the court is mindful that "[t]he words 'solely', 'exclusively', 'mostly', "primarily", "partially" or any other type of quantitative requirement do not appear in the hanging paragraph . . . ."[28]

## CONCLUSION

Considering all of the evidence and the circumstances, the court concludes that Ms. Reid bought the Vehicle to earn a living as a full time Uber driver and not for personal use. Thus, the hanging paragraph does not apply and Ms. Reid may value the Vehicle under section 506 of the Bankruptcy Code.

It is therefore **ORDERED**:

1.      The Motion (Doc. 17) is GRANTED, in part.

2.      A further hearing on the Motion is hereby set for July 10, 2018, at 10:00 a.m., at which time the court will set the matter for trial on the issue of the Vehicle's value. The parties may appear by telephone via Court Solutions.

Attorney Jay M. Weller is directed to serve a copy of this Decision and Order on interested parties who are not registered CM/ECF users and file proof of service with 3 days of its entry.

---

[28] *In re Solis,* 356 B.R. at 409.